

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
    **JUDGE**

**LETTER OPINION**

March 14, 2011

Patricia M. Franklin
81 Halsey Street
P.O. Box 32207
Newark, NJ 07102
    *(Attorney for Plaintiff)*

Kimberly L. Schiro
Special Assistant United States Attorney
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
    *(Attorney for Commissioner of Social Security)*

    RE:   *Cox v. Comm'r of Soc. Sec.*
             Civil Action No. 9-3810 (WJM)

Dear Counsel:

    Plaintiff Addie Cox ("Cox") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income and Disability Insurance Benefits. There was no oral argument. *See* Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

**I.**    **Standard of Review and the Social Security Legal Framework**

    This Court has plenary review of the Administrative Law Judge's ("ALJ") application of the law. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing 42 U.S. § 405(g)).

At the administrative level, a five-step process is used to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the ALJ moves to Step Two to determine if the claimant's alleged impairments qualify as "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or impairments, the ALJ inquires at Step Three as to whether the impairment or impairments meet or equal the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits and the analysis ends; if not, the ALJ moves on to Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At Step Four, the ALJ decides whether, despite any severe impairment(s), the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At Step Five, the burden shifts to the Commissioner to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec. Admin.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

## II.   Factual and Procedural Background

Cox applied for a period of disability and disability insurance benefits on April 6, 2006. Her application was denied, and she requested reconsideration and a hearing before an ALJ on October 18, 2007. On March 18, 2009, her hearing was held before ALJ James Andres, and in a decision dated March 31, 2009, the ALJ denied Cox's claims for benefits, finding she retained the ability to perform her past relevant work despite her impairments. The Appeals Council denied her request for review on June 9, 2009.

Cox was 59 years old at the time of the 2009 hearing. She has completed the 12th grade and has had no specialized vocational training. In the past, Cox has held several jobs including positions in the fields of childcare, food preparation, and data entry. (*See* Administrative Transcript, hereinafter "Tr.," at 16-17.)

On February 6, 2009, Cox experienced an episode of supraventricular tachycardia – a rapid heartbeat – which required emergency room care. (Tr. 18.) With the aid of cardiac enzymes, she stabilized and was discharged. (*Id.*) She takes prescribed cardiac medication with appears to stabilize her condition.(*Id.*) She has not experienced a similar episode since her discharge. (*Id.*) But she does allege other chronic symptoms, including severe pain that sometimes leaves her bedridden for days, weakness on the left side of her body, difficulty standing or sitting for long periods of time, trouble walking without the assistance of a cane, and other symptoms discussed below. (*Id.* at 18-20.) She also has hypertension. (*Id*. at 18-19.)

At Step Two, the ALJ found that Cox's cardiac arrhythmia and hypertension

qualified as severe impairments. (*Id.* at 18.) But at Step Three, the ALJ determined that the impairments, either separate or in combination, did not meet or equal a listed impairment. (*Id.* at 18-19.) Cox does not challenge the ALJ's findings at either Step Two or Three in this appeal. At Step Four, the ALJ determined that Cox was able to perform her past relevant work, and it is here that Cox objects.

## III.  Legal Analysis

### A.  When determining Cox's RFC at Step Four, the ALJ properly considered and rejected Cox's subjective complaints of pain as not credible.

Testimony of subjective pain and inability to perform even light work is entitled to great weight, although an ALJ may nonetheless reject a claim of disabling pain where he considers the testimony, specifies his reasons for rejecting these claims, and supports his conclusions with medical evidence in the record. *Harkins v. Comm'r of Soc. Sec.*, No. 09-4733, 2010 WL 3993348, at *3 (3d Cir. Oct. 8, 2010) (quoting *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990)). The ALJ's finding of credibility regarding a claimant's allegations of pain must be supported by substantial evidence. *See Giese v. Comm'r of Soc. Sec.*, 251 F. App'x 799, 803 (3d Cir. 2007).

In her application and during the hearing, Cox alleged pain and other symptoms arising from her impairments, including: shortness of breath; difficulty walking up steps; weakness on her left-side causing her an inability to walk without dragging her left foot; inability to stand for longer than fifteen minutes without support; inability to sit for longer than fifteen minutes before pain and numbness developed in her left side requiring her to stand to relieve those symptoms; inability to carry a half-gallon jug of water; inability to complete some daily activities, such as vacuuming or preparing simple meals, without stopping to rest; excessive sleepiness caused by prescribed pain medication; constant pain radiating from her left shoulder; and occasional bouts of severe pain that would leave her bedridden for three or four days at a time. (Tr. 19-20, 188-92.)

At the outset of his determination of the credibility of these allegations, the ALJ made the blanket statement that although these symptoms "could reasonably be expected to be caused" by her severe impairments, he did not find her allegations regarding the "intensity, persistence and limiting effects of the symptoms" to be credible. (*Id.* at 19.) Cox is correct that this statement alone would be insufficient to support the ALJ credibility findings. But the ALJ also worked through the record evidence and provided specific reasons why he rejected as not credible each of Cox's alleged symptoms. (*Id.* at 19-20.)

Cox argues that the ALJ's credibility determination is insufficient with regards to her allegations of pain. Cox further argues that the ALJ even failed to acknowledge Cox's pain. But the ALJ specifically discussed what he referred to as "the claimant's alleged left sided pain and weakness." (*Id.* at 20.) Regarding these symptoms, the ALJ reviewed the medical record, including the opinions of two consultative physicians, Dr. Justin Fernando and Dr. Rahmbai C. Patel, and found that there was no objective evidence of a

3

cause for her pain. (*Id.*) He specifically found that the medical evidence rules out any ischemic or neurological source for her alleged pain and symptoms. (*Id.*) He noted that Dr. Fernando, who completed an internal medicine consultative examination of Cox, found no evidence of left-side weakness, numbness, or muscle-loss. (*Id.*) And the ALJ noted that Dr. Patel, who also conducted an internal consultative exam of Cox, found slightly diminished strength in Cox's left side but that she was neurologically intact.(*Id.*) X-rays of her left hip and shoulder were normal, and while there was some evidence of arthritis in her right hip, Cox did not complain of any pain on her right side. (*Id.*) The ALJ then went on to discuss Cox's daily activities, noting that she lives alone and handles her daily needs independently. (*Id.*) Cox does not point to any medical evidence, report, or assessment that the ALJ did not take into account. Taken in sum, the ALJ's determination of the credibility of Cox's statements regarding her pain is supported by substantial evidence. *See Giese*, 251 F. App'x at 803 (holding ALJ's determination of credibility of claimant's allegations regarding symptoms was supported by substantial evidence where ALJ weighed relevant evidence and explained her rejection with reference to reports by multiple doctors and other evidence).

     Cox also argues that the ALJ erred by failing to consider the side effects of Cox's pain medications, specifically, that the medication caused her to sleep and then awaken to more intense pain. In considering a claimaint's symptoms, such as pain, an ALJ should consider the following seven factors: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, for the pain or other symptoms; (vi) any measures used to relieve pain or other symptoms (e.g., lying flat, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). But failure to consider one of the seven factors is not necessarily grounds for remand where the ALJ's entire analysis regarding claimant's symptoms is supported by substantial evidence. *See, e.g.*, *Centeno v. Comm'r of Soc. Sec.*, No. 09-6023, 2010 WL 5068141, at *7-8 (D.N.J. Dec. 6, 2010). And here, because the ALJ found that her complaints of pain were not credible, the ALJ did not need to consider the side effects of any medications for that pain. While the ALJ should include as much information regarding his decision as possible, this particular failure does not mean that his credibility determination was not supported by substantial evidence nor does it compel this Court to find the ALJ erred in making that determination.

### B.    The ALJ did not err by failing to conduct a function-by-function assessment of Cox's ability to perform her past relevant work.

     At Step Four, the ALJ also determined that Cox was able to perform her past relevant work as a data entry operator. (Tr. 20-21.) The ALJ's determination that Cox had past relevant work experience rested in part on the work history reports Cox submitted.

(*Id.* at 20.) The ALJ also relied on Cox's claims in determining the exertional and non-exertional requirements of her past relevant work, noting that Cox reported she sat up to eight hours a day, and walked and stood about ten minutes a day in performing her job. (*Id.* at 20-21.) The ALJ determined this was sedentary work and that Cox could perform it in light of his findings regarding Cox's RFC. (*Id.* at 21.)

Cox argues that ALJ erred in this determination because he failed to conduct a function-by-function assessment of Cox's ability to perform work as required by Social Security Ruling ("SSR") 96-8p. Specifically, Cox argues that the ALJ failed to cite specific medical facts and non-medical evidence, failed to discuss her ability to perform sustained activity in an ordinary work setting on a regular basis, and failed to discuss the maximum amount of each work-related activity Cox could perform. But the ALJ discussed all of these issues in determining Cox's RFC. As mentioned above, the ALJ carefully considered the medical facts and non-medical evidence presented in Cox's testimony regarding her impairments and alleged symptoms in determining how these affected her RFC. The ALJ also relied on this evidence and an RFC assessment provided by a non-examining physician in determining the maximum amount of work-related activities Cox could perform, including "lifting and carrying up to 10 pounds; sitting up to 6 hours in an 8 hour workday; and standing and walking up to 2 hours in an 8 hour work day." (Tr. 20.)

### C. The ALJ complied with SSR 82-61 and SSR 82-62 in determining Cox was able to perform her past relevant work.

Cox also argues that the ALJ failed to comply with SSR 82-61 and SSR 82-62 in determining that Cox was able to perform her past relevant work. Cox quotes SSR 82-61, claiming it requires the ALJ to "fully investigate and make explicit findings as to the physical and mental demands of a claimant's past work and to compare that with what the claimant is capable of doing." But this language does not appear in SSR 82-61, nor does it appear in SSR 82-62. Rather, it is a quote from the Eighth Circuit Court of Appeals' decision in *Nimick v. Secretary of Health and Human Services*, 887 F.2d 864, 866 (8th Cir. 1989). That decision is not binding on this Court, and counsel for Cox should be more careful about the representations she makes to this Court.

Even assuming this Court was to accept *Nimick* as controlling or persuasive authority, Cox fails to show how the ALJ's decision here is inadequate. Cox argues that the ALJ failed to compile or develop an adequate record regarding the demands of Cox's past relevant work. Cox further argues that the ALJ failed to compare those demands with what the claimant is capable of doing because the ALJ did not consider how Cox's allegations of pain and other symptoms affect her ability to meet those demands. But Cox is wrong on both points.

First, SSR 82-62 states that "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." Here, the ALJ specifically relied on Cox's own testimony and work

5

history reports in determining the demands of her past relevant work. Other than bare assertions, Cox does not explain how these statements – which SSR 82-62 recognizes as "generally sufficient" for such purposes – are somehow inadequate here.

Second, neither SSR 82-61 nor SSR 82-62 requires an ALJ to accept a claimant's subjective statements regarding her limitations. Rather, such statements are only one factor SSR 82-62 requires an ALJ to consider in determining whether a claimant can perform past relevant work. SSR 82-62 also requires an ALJ to consider "medical evidence establishing how the impairment limits ability to meet the physical and medical requirements of the work." Here, the ALJ reviewed both Cox's subjective statements and relevant medical evidence in determining Cox's RFC, and, as held above, his decision is adequately supported by substantial evidence.

### D. The ALJ did not err by failing to call a vocational expert.

Cox argues that because Cox's case presents significant exertional and nonexertional limitations, the ALJ was required to obtain evidence from a vocational expert. Cox is correct that under certain circumstances a vocational expert may be required to determine how a claimant's limitations impact her ability to work. *See, e.g.*, *Sykes v. Apfel*, 228 F.3d 259, 270 (3d Cir. 2000). Those circumstances include where there is an RFC which is compatible with the performance of either sedentary or light work except that the claimant must alternate periods of sitting and standing. *See* SSR 83-12. But Cox is incorrect that such a rule applies here. The ALJ did not find that Cox has any significant exertional or nonexertional limitations, and the ALJ did not assess Cox's RFC as requiring her to alternate periods of sitting and standing. In this appeal, Cox did not even challenge the ALJ's RFC assessment with regards to her alleged need to alternate periods of sitting and standing. Reliance on a vocational expert was not necessary.

## IV. Conclusion

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

 /s/ William J. Martini  
**WILLIAM J. MARTINI, U.S.D.J.**